Sevan Gorginian (SBN 298986)
**Law Office of Sevan Gorginian**
450 N. Brand Boulevard, Suite 600
Glendale, California 91203
**Tel:** 818.928.4445 **| Fax:** 818.928.4450
**Email:** sevan@gorginianlaw.com

Counsel for Debtors

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

In re:

AGAPITO PALAD BAROMA and
NONA BAROMA,

                                          Debtors.

Bankruptcy No. 2:18-bk-21696-VZ

Chapter 7

DEBTORS' DECLARATION RE: FACTS IN
SUPPORT OF THEIR POSITION WITH
RESPECT TO THIS PENDING CASE

Petition Date: October 4, 2019
Continued 341(a): January 17, 2019

**TO THE HONORABLE VINCENT ZURZOLO, OFFICE OF THE UNITED STATES
TRUSTEE, THE CHAPTER 7 TRUSTEE AND HIS ATTORNEYS OF RECORD:**

Mr. Agapito Palad Baroma ("Agapito") and his wife Mrs. Nona Baroma ("Nona", with

Agapito known together as the "Baromas") file this declaration to explain the unfortunate events

that led to the *unauthorized, forged and fraudulent* bankruptcy filing that commenced this entire

proceeding. The Baromas will also seek the assistance of the Office of the United States Trustee

("UST") to file a civil and criminal action against their loan modification agent, Mr. Sergio Lara

("Sergio") from The Mortgage Guys located in Pasadena, California.

Without waiving any rights, the Baromas do not consent to this bankruptcy filing nor to this

Court's jurisdiction. The filing of this declaration and another other documents (i.e. motion to

extend deadline to file schedules, motion to dismiss, etc.) should not be construed to imply that

the Baromas impliedly consent or voluntarily ratify this bankruptcy filing.

## JOINT DECLARATION OF AGAPITO AND NONA BAROMA

We, Agapito Palad Baroma and Nona Baroma, do hereby attest as follows:

1.      We are the debtors in this pending bankruptcy case.  We are over the age of 18 and have personal knowledge of the facts set above.  We reside in our home located at 950 Verdugo Circle Drive, Glendale, CA 91206.   If called as a witness, we could and would competently testify thereto.

2.      To begin, we wish to clarify that we will cooperate with the Chapter 7 Trustee, his attorneys and the Office of the United States Trustee to rectify this fraudulent bankruptcy case. With that said, we will file all required documents as requested by the Court but our cooperation and filings should **not** be construed that we ratify, accept and consent to this bankruptcy filing. We strongly object to being in bankruptcy for the simple fact that we did *not* sign our bankruptcy petition, we did *not* authorize anybody including Sergio or his agents to file this bankruptcy petition nor gave any indication thereto.

3.      We would like to now provide facts to provide context and history as to the events.

## PREPETITION FACTS – LOAN MODIFICATION

4.      On or about 2013 and 2014, we began to experience some financial hardship with respect to our loans, which led us to seek assistance to modify the first loan on our house.

5.      On or about 2014, we met Sergio Lara ("Sergio") through a referral from a friend and we were told he does loan modifications.  Currently, Sergio is employed at a company called The Mortgage Guys, Inc. located at 16 Marengo Avenue # 716, Pasadena, CA 91101.    See **Exhibit A** for a true and correct copy of the profile of Sergio on the website and is the person we have dealt with.   The person in the picture on the website is Sergio and the person we have been dealing with all along.

6.      At this time, we cannot remember if we have a contract for the loan modification but we did sign a power of attorney with the lender, Specialized Loan Servicing, in order to authorize Sergio to work on our loan modification application.

2

7.      In 2016, Sergio was able to modify our first loan on our house.  To the best of our recollection, we paid Sergio or his company $1,200 up front for the loan modification.  We found out just recently that it is illegal under California state law to pay up front for a loan modification.  After the first loan modification was successful, a law firm that Sergio utilizes thereafter refunded the money.  We used that refunded $1,200 (approximate) to pay Sergio to thereafter help modify our second loan.

8.      The loan modification on our second loan was taking a long time, so I (Nona) called Sergio to ask for the status of the loan modification.

9.      Sergio told me (Nona) not to worry because 2nd lienholders do not foreclose.  We believed him.

10.     In May of 2017, Sergio also told me (Nona) that he "*dropped the ball*" because he was sick or unavailable for some reason.  However, Sergio assured us that he will be more attentive and get the loan modification complete.    Again, Sergio assured us that the 2nd lienholder would not foreclose so we should not be worried.  That is all we cared about, our home not being foreclosed upon.

11.     We trusted Sergio and his company very much because they seemed professional, knowledgeable and they helped us with our first loan so there was no reason not to trust him.

12.     In February of 2018, we received in the mail a Notice of Default and Notice of Intent to Foreclose from our second lienholder.   We were surprised and got scared that something was wrong and our home was going to be foreclosed.

13.     I (Nona) called Sergio to ask him about the Notice of Default that we received.  Again Sergio assured me not to worry and that he is working on the loan modification.  Sergio said to us that since the loan modification was in process that there would be no foreclosure.  Again, we trusted him and prayed that everything went smoothly.

14.     A few months later, we received a Notice of Sale on or about September 9, 2018.

15.     This Notice of Sale really scared us because there was a sale date listed for October 5, 2018.  This really caused us to worry so I (Nona) immediately called Sergio again to ask what is going on and to get an update.

16.     Sergio told us to simply "take down the Notice of Sale" from the door, don't worry about it.  We began to experience some uneasiness because of this Notice of Sale.

17.     Sergio told us not to worry and that there would be a **"soft hold"** placed to stop the sale.   We thought this was vocabulary used by professionals related to the loan modification.  Again, we trusted him and believed this was typical in a loan modification process.   We had no idea what a "soft hold" was but it was our belief that it had something to do with the loan modification process.

18.     On September 27, 2018, in the text message communication between Sergio and I (Nona), I asked Sergio how much do we owe him for the "hold service" and he texted back "*County filing fee: $325"* and "*Attorney representing **the hold:** $260."* For a total of $585.   Notice this text message does not reference the word "bankruptcy" at all.  See **Exhibit B** for a copy of the text message exchange.

19.     Please notice also that this text message varies materially from the "invoice" Sergio sent us later.  In this text communication, Sergio does not reference any bankruptcy but simply "*Attorney Representing The Hold*."   This is where we learned of this "soft hold" language.

20.     On or about the same time, I (Nona) texted Sergio telling him to let us know when the "soft hold" had been filed.   Again – we had no idea what a "soft hold" was but we believed it had something to do with the loan modification and that Sergio had to file something with the County to give notice to the lender to temporarily stop the sale.  ***At no time, whatsoever, did we ever think this was a bankruptcy***.   Sergio did not tell us either.  In fact, we were current with our debts to our credit cards, which is further indicia that we did not need bankruptcy protection.  Nobody was suing us either to cause us to file bankruptcy.

21.  Sergio replied that "*everything has been filed*."  On September 27th, I (Nona), asked him if there was a way to check if the foreclosure sale date was put on a "soft hold." Sergio replied that "*it (the sale) was on hold*".  I asked him how much we owed him and he texted us an itemized filing fee as follows:

**"County Filing Fee:  $325"**

*(note: this text does <u>not</u> say bankruptcy filing fee, so we thought the "County Fee" was perhaps the L.A. County Recorder's Office).*

**"Attorney Representing Hold: $260"**

*(in retrospect our current bankruptcy attorney believes this was the process servers fee who went to the bankruptcy courthouse to file).*

**Credit Reporting Fee:  $100**

*(our current bankruptcy attorney told us that this was for the credit counseling courses that someone in Sergio's office completed for us on DebtorCC.org.  It is very mischievous for Sergio to have charged us $100 for "two courses" when the first course costs $14.95 and the second course $9.95). Sergio is just making extra money off of us.*

## PETITION DATE

22.  On October 4, 2018 (the petition date), we called Sergio to ask what is going on with the scheduled sale date.  Sergio told us, "*they filed the documents at the courthouse and emailed them to the bank*."   Again, we had no idea that they were going to file bankruptcy.  We innocently believed this was all part of the process to stop a "Notice of Sale" and get a loan modification to stop the foreclosure.

## CREDIT COUNSELING COURSE

23.  On October 4, 2018, somebody completed the prepetition credit counseling course for us at 1:54 p.m. (about 30 minutes before the filing).   See **Exhibit C** for a true and correct copy of the credit counseling certificate filed on the docket.

24.     We did **not** complete this credit counseling course and do not know who took the course for us.    Based on the timeline, it appears that someone urgently completed the credit counseling course and thereafter quickly filed the bankruptcy petition at the Clerk's office.

25.     Our attorney, Sevan Gorginian, showed us the credit counseling course website at www.DebtorCC.org where the credit counseling course was taken.    We have never seen this website nor participated in any credit counseling course except for a course we took back in 2010 when we filed bankruptcy back at that time.

26.     Perhaps the Trustee or the U.S. Trustee can try to contact DebtorCC.org to do an I.P. trace to figure out from which computer was this credit counseling course completed.    We have a feeling it was through Sergio's office and they fraudulently filled out the paperwork and took the course for us.

27.     On October 1, 2018, I (Nona) told Sergio I needed to know how to pay him for the "soft hold" that they filed.    On October 3, 2018, Sergio texted me a paper showing an invoice billable to him.  I will find the invoice he texted me and will update the UST and Trustee.

28.     This "invoice" paper that Sergio texted me is dated September 2018, but we never received this invoice in the mail except through a text.    We think Sergio also falsified this September 2018 date on the invoice to help him cover his tracks.    When I (Nona) received the text message of the invoice, I made the unfortunate mistake of not reading it carefully because I assumed the written invoice (in paper format) that Sergio texted me was the same information that Sergio texted me in a blank text.    All I wanted was some kind of invoice to show that we paid the $695 for this "soft hold" regarding our loan modification.    Although it says the words "bankruptcy" on the invoice, I inadvertently did not see that at the time, but only saw it when my attorney pointed it out to me recently.    Again, it was not unreasonable for me to believe that this written receipt would be any different than the text receipt Sergio sent us.    For example, if someone were to text me "Nona, you owe $10 for haircut."  I would agree and pay.    Thereafter, if I ask the same person to please give me a written paper receipt for the haircut, the person would write "Haircut $10" instead of "Haircut $9, Bankruptcy Filing $1."    That would be wrong because it

implies that Sergio intended to sneak in some facts that would help him shift the blame to us but we honestly did not know.

29.     Sergio texted me prior to this "receipt" an itemized text message outlining the fees. In that prior text message, he did not reference any "bankruptcy" in there.  Sergio only put there was a "hold."

30.     Later – when I asked him for a paper receipt, Sergio drafted that invoice and put the words "bankruptcy" in there presumably to cover his tracks.   This "invoice" was sent to me by text on my phone and the font size was small.  I did not click to enlarge it but simply trusted that it was an invoice for $695 for services related to the loan modification process as he said in his text message.   As long as I received some kind of invoice for the $695, I was satisfied but I was foolish in not reading it more carefully.  I quickly put the phone away and did not look at the invoice-text again.

**POSTPETITION EVENTS**

31.     On October 4, 2018, I (Nona) visited Sergio's bank, Chase, to directly transfer Sergio's requested $695 to his bank account.  I thought it was for the loan modification.  See **Exhibit D** for a true and correct copy of the Chase Bank Receipt re: the transfer Nona made.

32.     We did not know about the bankruptcy until October 6, 2018 (two days after) when I (Agapito) received a text message notification from Equifax stating that there was some activity on my Equifax credit report.   See **Exhibit E** for true and correct copy of the text.   I clicked on the link and went to my Equifax page where I saw a bankruptcy notification.   I was angry and confused.

33.     I (Agapito) was surprised and upset to see this text.  I asked my wife Nona if she knew what it was and whether she knew Sergio or somebody filed bankruptcy in their name.  My wife did not know either.

34.     I, Nona, immediately texted Sergio to ask him about this bankruptcy notification.

35.    On October 8, 2018, there was a telephonic conference between Sergio and us both.  On this call, we were panicking and frantic.  Sergio continually told us to calm down and not to worry.  Sergio said that "*this (the bankruptcy) will all go away.*"

36.    In retrospect, our attorney believes that Sergio's plan was to file an emergency bankruptcy and then instruct us not to file any of the remaining bankruptcy schedules and not to attend the 341(a) meeting with the trustee.  In most cases, this works presumably because the court will automatically dismiss the case.  However, as our attorney explained, this will not be the case if there are assets to administer.

37.    On October 8, 2018, I (Nona) called our bank and the representative told us that our accounts were frozen.  We were surprised and did not know why the bank had frozen our accounts.  The representative told us to call the "bankruptcy department."   This was the first time that both of us realized what Sergio meant with the "soft hold" – it meant to us that he filed a bankruptcy under our name.   We felt cheated and defrauded.

38.    ***At no time, did we ever authorize or give anybody any permission to file a bankruptcy for us***.  The signatures on the bankruptcy petition are ***absolutely and unequivocally forged***.  That is ***not*** our signatures despite how similar it may look.  Even if the signatures look 100% exactly the same – if we did not sign it, then we did not sign it.  It was forged.  We explained the forgery at our meeting with the trustee and we felt ridiculed and chastised for our position.  We can get a handwriting expert to prove that the signatures is not ours.  If you look carefully, the "T" in my, Agapito's, name does not have the line crossed.  I am left handed and whenever I sign my name, I cross the "T" by dragging a line from right to left being that I am left handed.  Whoever signed this was right handed and more importantly did not cross the "T" in my name.

39.    It is important for the honorable Court, the Chapter 7 Trustee and the U.S. Trustee to believe us that at no time did we intentionally want to disregard the Trustee's requests.  We did not intentionally choose to disregard the Court's notice re: attending the 341(a) meeting with the trustee.  **Sergio told us to ignore everything** and "it will all go away."   We were misled and we apologize for any delay and inconvenience.

8

40.     On October 11, 2018, I, Nona, was very upset at Sergio and I went to his house located at 8927 Seranata Drive Whittier, CA 90603.   I went there to confront Sergio and demand answers and an explanation of what is going on and why he filed a bankruptcy.   This is my family's house and where I operate my daycare business.   See **Exhibit F** for a copy of this communication exchange.

41.     Sergio became defensive with me.   I asked him, "*Why did you not tell us you were going to file bankruptcy!*?"   Sergio replied defensively, "*Nona, you did not really have a choice!*" and said, "*Nona, you brought this hardship on yourself.*"   It became clear again that now he was trying to shift the blame on us.

42.     At some point in our conversation, Sergio admitted to me that he dropped the ball on the loan modification.   This meant to me that due to his own negligence and mistake, he felt the only solution left was to forge our signatures and file the bankruptcy case or as he called it a "soft hold."

43.     During the pending bankruptcy, Sergio continued to work on our loan modification and he was successful to get our second loan modified.

44.     The bankruptcy apparently was not going away as easily as Sergio made it seem. We began to receive several documents in the mail from the U.S. Bankruptcy Court.

45.     Sergio kept telling us, "*don't worry, the bankruptcy will go away just ignore it.*"

46.     Thereafter, Sergio realized that the bankruptcy was "not going away" and he told us we had to deal with it.

47.     On or about November 7, 2018, two realtors came to our house for an inspection and appraisal.   We were shocked and very confused why there were realtors at our house.

48.     I, Nona, texted and called Sergio to ask him why there were realtors at our house who said they (the realtors) were hired to sell our house.   Please put yourselves in our position – we live in our home and have a family.   To have realtors suddenly show up and say "we were hired to sell your house" will send any reasonable homeowner into a state of shock and panic, especially before the holidays.     We began to experience considerable anxiety and asking ourselves where were we going to live?  what do we do?  what is going to happen to my daycare

business?  are we going to be homeless?  We felt very lost.   See **Exhibit G** for a copy of the text communication between Nona and Sergio about the realtors who came to the house.

49.     After we told Sergio that the realtors came to our house, Sergio referred us to our former attorney, Kenumi Maatafale ("<u>Kenumi</u>").   I told Sergio in my text that I "could not sleep all night.   I recall you saying if I did not show up at the bankruptcy court, the bankruptcy application will get dismissed."   See **Exhibit H** for a true and correct copy of the text message.

50.     Kenumi substituted into the case and caused a whole new set of mistakes.   We paid Kenumi $3,000 for services he said included "objecting to the employment of Arent Fox" and to "file a motion to dismiss."   We felt comforted to know that this bankruptcy will go away now. We were very wrong and Kenumi caused unnecessary mistakes himself.

51.     We attended our continued 341(a) meeting with the trustee on December 19, 2019. At this meeting we strongly expressed our position that we did not sign the petition and we never wanted to be in bankruptcy.   The Chapter 7 Trustee and his staff appeared to not believe that the signatures on the petition were not ours.   It is not our signature even if the signatures match 100%.  We did not sign it nor authorize anyone to forge our signature.

52.     On December 22, 2018, we met with our current attorney, Sevan Gorginian, who decided to take our case in order to help us through this difficult time.   We did not have any confidence in Kenumi and felt that Kenumi and Sergio were somehow related in this scheme but we are not sure.

53.     At the direction of our new attorney, on December 26, 2018, we went to the U.S. Bankruptcy Court's clerk's intake window to procure a copy of the photo ID of the person who filed the bankruptcy petition.  The intake clerk, his name was Sonny, said he would not be able to release that information.  However, our attorney was able to procure the name.  The person who filed the bankruptcy petition was **Edith Escalante**.  We do not know this person nor met anyone by this name but she is presumably from Sergio's office.

54.     As of the date of this declaration, we are current with our first and second modified loans now and with our unsecured debts (credit cards and services).  We do not need to be in a

1    bankruptcy (we got our loan modifications approved, we are current with our payments to other

2    creditors and do not want to risk jeopardizing our house).

3        55.    We will await direction from the US Trustee's Office and comply with the Court's

4    and Trustee's requests.  However, we strongly object to being in bankruptcy and thereby will file a

5    motion to dismiss and expunge the record.   Pending that outcome, we may thereafter settle with

6    the Chapter 7 Trustee or convert the case to Chapter 13.  We strongly recommend the UST to

7    investigate Sergio and his fraudulent and mischievous company that he works for.   It is unknown

8    how many other people they have done this too.

9        56.    On December 24, 2018, Kenumi signed the substitution of attorney form and my

10   attorney filed a substitution form on December 26, 2018.

11       57.    We will cooperate with the Court, the U.S. Trustee's Office and the Chapter 7

12   Trustee to rectify this unwelcomed bankruptcy.   We intend to file a motion for an extension of

13   time to file our schedules and also file a motion to dismiss and expunge this record.  Pending the

14   outcome of the motion to dismiss, we will continue to cooperate with the Chapter 7 Trustee and

15   the UST to resolve this matter.

16

17       We declare under penalty of perjury the laws of the United States of America and the state

18   of California that the above statements are true and correct. This declaration is executed on

19   December 26, 2018 in Glendale, California.

20

21   _____
     Agapito Palad Baroma
22   Declarant

23

24   _____
     Nona Baroma
25   Declarant

26

27

28

EXHIBIT A



EXHIBIT B



2:39

**New iMessage**          Cancel

To: Sergio Lara

Hi Sergio
Just wanted to make sure that
you received all that you
requested for today

I did. I have everything i need.

Ok. I'll pay you on Friday.

Thank you

sounds good

Wed, Sep 26, 11:11 AM

Hi Sergio
Kindly let us know when you've      ← Soft
filed the "soft hold" (?).              Hold
Thank you

Everything has been filed.

It was a bit more expensive. The
county filing fee was different
then they originally quoted.

iMessage



2:43

New iMessage                    Cancel

To: Sergio Lara

Yes. I'm on it. I'm calling on a
daily basis.

Ok. I meant is there a way to
check if they put sale date on
hold

Yes it's on hold.

Ok. How much do we owe you
I can talk later

*Sergio then converted this language into a "invoice" and added the words "Bannruprey"*

The county raised its filing fee.

County filing fee : $325.00
Attorney Representing the hold :
$260.00

Total $585.00

I'll go over this on our call.

Ok

Sat, Sep 29, 1:09 PM

iMessage

EXHIBIT C



**FILED**

OCT 04 2018

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

2:18bk216962

Certificate Number: 15725-CAC-CC-031714426

|||||||||||||||||||||||||||||||||||||||||
15725-CAC-CC-031714426

## CERTIFICATE OF COUNSELING

I CERTIFY that on <u>October 4, 2018</u>, at <u>1:54</u> o'clock <u>PM EDT</u>, <u>Agapito Baroma</u>
received from <u>001 Debtorcc, Inc.</u>, an agency approved pursuant to 11 U.S.C. §
111 to provide credit counseling in the <u>Central District of California</u>, an
individual [or group] briefing that complied with the provisions of 11 U.S.C. §§
109(h) and 111.

A debt repayment plan <u>was not prepared</u>. If a debt repayment plan was prepared, a
copy of the debt repayment plan is attached to this certificate.

This counseling session was conducted <u>by internet</u>.

Date:   <u>October 4, 2018</u>          By:    /s/Angela Rosa

                                       Name:  Angela Rosa

                                       Title:  Counselor

* Individuals who wish to file a bankruptcy case under title 11 of the United States Bankruptcy
Code are required to file with the United States Bankruptcy Court a completed certificate of
counseling from the nonprofit budget and credit counseling agency that provided the individual
the counseling services and a copy of the debt repayment plan, if any, developed through the
credit counseling agency. *See* 11 U.S.C. §§ 109(h) and 521(b).

2  18bK21696VZ



FILED

OCT 04 2018

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

Certificate Number: 15725-CAC-CC-031714427



15725-CAC-CC-031714427

## CERTIFICATE OF COUNSELING

I CERTIFY that on October 4, 2018, at 1:54 o'clock PM EDT, Nona Baroma
received from 001 Debtorcc, Inc., an agency approved pursuant to 11 U.S.C. §
111 to provide credit counseling in the Central District of California, an
individual [or group] briefing that complied with the provisions of 11 U.S.C. §§
109(h) and 111.

A debt repayment plan was not prepared. If a debt repayment plan was prepared, a
copy of the debt repayment plan is attached to this certificate.

This counseling session was conducted by internet.

Date:    October 4, 2018            By:    /s/Angela Rosa

                                    Name:  Angela Rosa

                                    Title:  Counselor

* Individuals who wish to file a bankruptcy case under title 11 of the United States Bankruptcy
Code are required to file with the United States Bankruptcy Court a completed certificate of
counseling from the nonprofit budget and credit counseling agency that provided the individual
the counseling services and a copy of the debt repayment plan, if any, developed through the
credit counseling agency. See 11 U.S.C. §§ 109(h) and 521(b).

EXHIBIT D







**Sergio** >

> Hi Sergio
> Bong is asking if you can
> get written confirmation
> from the bank?

Yes. As soon as I get
something.

Thu, Oct 4, 5:18 PM

> Any news

Thu, Oct 4, 7:09 PM

> Thank God.
> Thank you.
> Will wait for your update in
> the morning.
> Sorry I was rushing earlier.
> Talking with parents of
> children.

No worries Nona. Thank

  iMessage 

EXHIBIT E

AT&T                           85% 12:40 PM

< **+14159675020**                    ☎ ≡

Monday, September 17, 2018

 TrustedID has noticed a change on your credit report that may need your attention. Please log in to www.trustedid.com. Reply HELP for help, STOP to cancel.          9:01 AM

Saturday, October 6, 2018

 TrustedID has noticed a change on your credit report that may need your attention. Please log in to www.trustedid.com. Reply HELP for help, STOP to cancel.          8:44 AM

Mr. BAroma's text from Equifax
RE: Notice alert. He clicked on this
link which led him to his credit profile
and he saw the "BK Notice"

 Enter message          

EXHIBIT F





EXHIBIT G













EXHIBIT H



**ll AT&T** 🥈          3:55 PM          ⓐ ⬧ 83% ⬛

**< ①**              **SL**

                   Sergio >

Thu, Nov 8, 5:21 AM

I'm sorry, Sergio, but I could
not sleep all night.

I recall you saying if we did
not show up at bankruptcy
court, bankruptcy
application will just get
dismissed. But maybe that
wasn't what happened. As a
result, it affected our first
loan? That's the only thing I
can think of why this is
happening.

Thu, Nov 8, 8:22 AM

Good morning Nona, I'm
headed to the office and will
call you once I speak with all
parties.

Give me till about 10am

📷 🅐  iMessage          🎤









**•ıll AT&T** 🤶   **3:56 PM**   @ ⚡ 82% ▬

‹ ❶

**SL**

Sergio ›

give them any information.

The lawyer will take care of it.

You can call them once you get to the office

So what do the teachers tell them if they insist on coming in

Do I bring all paperwork

From beginning

Sure.

Take as much info as you can.



Ok

Delivered

  ( iMessage ) 

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 450 North Brand Boulevard, Suite 600 Glendale, CA 91203.  A true and correct copy of the foregoing document entitled (*specify*): DEBTORS' DECLARATION RE: FACTS IN SUPPORT OF THEIR POSITION WITH RESPECT TO THIS PENDING CASE
 will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On  ´12/26/2018 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Wesley H Avey
wes@averytrustee.com, C117@ecfcbis.com;lucy@averytrustee.com;alexandria@averytrustee.com
Sevan Gorginian on behalf of Debtor Agapito Palad Baroma
sevan@gorginianlaw.com, notices@nextchapterbk.com;serj@gorginianlaw.com
Kenumi T Maatafale on behalf of Debtor Agapito Palad Baroma
kmt.ampah@excite.com, kmt.ampah@excite.com
Kenumi T Maatafale on behalf of Joint Debtor Nona Baroma
kmt.ampah@excite.com, kmt.ampah@excite.com
Aram Ordubegian on behalf of Trustee Wesley H Avery (TR)
ordubegian.aram@arentfox.com
Annie Y Stoops on behalf of Trustee Wesley H Avery (TR)
annie.stoops@arentfox.com
United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**:
On 12/26/2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Vincent Zurzolo
255 E. Temple Street # 1360
Los Angeles, CA 90012

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/26/2018 | Sevan Gorginian | /s/ Sevan Gorginian |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

12